**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRIAN HIGHTOWER, | |
| Plaintiff, | Case No. 25-cv-01078 |
| v. | District Judge April M. Perry |
| UNION PACIFIC RAILROAD COMPANY, | Magistrate Judge Gabriel A. Fuentes |
| Defendant. | |

**MOTION TO DISMISS FOR LACK OF JURISDICTION OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## **<u>TABLE OF CONTENTS</u>**

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND.................................................................................3

     A.    Union Pacific Served As A Government Contractor For Metra At All Relevant Times ................................................................................3

     B.    Plaintiff's Claims .........................................................................................4

III.   ARGUMENT .........................................................................................................5

     A.    This Case Should Be Dismissed Because The RLA Preempts Plaintiff's Claims ...........................................................................................5

          1.    The RLA Preempts Disputes Involving The Application Or Interpretation Of Collective Bargaining Agreements .................................6

          2.    This Case Presents A Minor Dispute Under The RLA.............................8

     B.    Union Pacific Is Entitled to Summary Judgment As A Government Contractor ...................................................................................11

IV.   CONCLUSION....................................................................................................14

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................................5

*Bhd. of Loc. Eng'rs and Trainmen v. Union Pac. R. Co.*,
   879 F.3d 754 (7th Cir. 2017) ...............................................................................6, 7

*Bhd. of Main. of Way Emps. v. Union Pac. R. Co.*,
   2003 WL 21673930 (N.D. Ill. July 16, 2003)..........................................................7

*Bhd. of Ry., Airline & S.S. Clerks v. Atchison, Topeka & Santa Fe Ry. Co.*,
   847 F.2d 403 (7th Cir. 1988) ..................................................................................8

*Buchanan-Moore v. Cnty. of Milwaukee*,
   570 F.3d 824 (7th Cir. 2009) ..................................................................................5

*Burlington N. R. Co. v. United Transp. Union*,
   862 F.2d 1266 (7th Cir. 1988) ................................................................................7

*Consol. Rail Corp. v. Ry. Labor Executives Ass'n*,
   491 U.S. 299 (1989)......................................................................................6, 7, 8, 9

*Continental Indemnity Co. v. BII, Inc.*,
   104 F.4th 630 (7th Cir. 2024) .................................................................................5

*Enriquez v. Navy Pier, Inc.*,
   2022 IL App (1st) 211414-U, *appeal denied*, 201 N.E.3d 582 (Ill. 2023) ........11, 12

*Hawaiian Airlines, Inc. v. Norris*,
   512 U.S. 246 (1994)................................................................................................6

*Int'l Bhd. of Teamsters v. Republic Airways Inc.*,
   127 F.4th 688 (7th Cir. 2025) .............................................................................6, 11

*Kwasnik v. Nat'l R. Pass. Corp.*,
   1997 WL 109977 (N.D. Ill. Mar. 7, 1997)............................................................7, 9

*Lee v. Union Pac. R. Co.*,
   2004 WL 2937385 (N.D. Ill. May 24, 2004) ...........................................................8

*MCI WorldCom Commc'ns, Inc. v. Metra Commuter Rail Div. of RTA*,
   786 N.E.2d 621 (Ill. Ct. App. 2003) ......................................................................12

*Miller v. Sw. Airlines Co.*,
    926 F.3d 898 (7th Cir. 2019) ................................................ *passim*

*Pisciotta v. Old. Nat'l Bancorp*,
    499 F.3d 629 (7th Cir. 2007) .......................................................5

*Ry. Labor Executives Ass'n v. Norfolk & W. Ry. Co.*,
    833 F.2d 700 (7th Cir. 1987) .......................................................7

*Stephens v. Am. Airlines, Inc.*,
    596 F. Supp. 3d 1059 (N.D. Ill. 2022) .......................................10

*Tice v. Am. Airlines, Inc.*,
    288 F.3d 313 (7th Cir. 2002) .....................................................10

*Tillman v. Pritzker*,
    183 N.E.3d 94 (Ill. 2021) ...........................................................12

*Trainmen v. Chi. R. & I.R. Co.*,
    353 U.S. 30 (1957) .......................................................................6

*Union Pac. R.R. Co. v. RTA*,
    2021 WL 4318106 (N.D. Ill. 2021) ..............................................3

*VanSylck v. GoJet Airlines, LLC*,
    323 F.R.D. 266 (N.D. Ill. 2018) ...................................................8

*Ware v. Best Buy Stores, L.P.*,
    6 F.4th 726 (7th Cir. 2021) ..........................................................5

## STATUTES

30 ILCS 805/3(a) .............................................................................12

740 ILCS 14/1 *et seq.* ......................................................................1

740 ILCS 14/15(b) ............................................................................9

740 ILCS 14/25(e) ................................................................2, 11, 13

45 U.S.C.
    § 151 *et seq.* ...............................................................................1
    § 151a ..........................................................................................6
    § 152 ..........................................................................................10

## RULES

Fed. R. Civ. P.

12(b)(1) ........................................................................................................1, 5, 11

12(b)(6) ...............................................................................................................5

12(c) ...............................................................................................................1, 5

56(a) ..............................................................................................................1, 5

56.1(a)(2) ...........................................................................................................3

## OTHER AUTHORITIES

Black's Law Dictionary (11th ed. 2019)..................................................................12

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(c), and 56(a), Defendant Union Pacific Railroad Company respectfully moves to dismiss Plaintiff Brian Hightower's claims under the Illinois Biometric Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA" or the "Act"), as preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, or, in the alternative, for summary judgment.

## I.      INTRODUCTION

From approximately 1995 to May 2025, Union Pacific contracted with the Commuter Rail Division of the Regional Transportation Authority ("Metra"), a government agency, to operate Metra commuter trains in the Chicago area.  And from approximately 1995 until June 2024, Union Pacific owned and operated a maintenance facility, the M19A Locomotive Facility in Chicago, where Union Pacific employees performed inspections and maintenance on locomotives used on Metra lines.  Union Pacific employed Plaintiff as a machinist at M19A from 1996 until June 2024. Throughout Plaintiff's employment with Union Pacific, he (like the other machinists at the M19A Facility) was a member of the International Association of Machinists and Aerospace Workers (the "Machinists Union").

For many years, Union Pacific used various methods to keep track of employee attendance at its M19A Facility.  Tracking the times when employees clocked in and out of M19A was important to the effective operation of the facility and to ensure that employees were properly paid. Since at least 2019, Union Pacific required employees at the M19A Facility to use finger scans to clock in and out of work.  Plaintiff alleges that Union Pacific's use of this timekeeping system violated BIPA because it allegedly collected, captured, and used Plaintiff's biometric identifiers and biometric information without obtaining his informed consent.  Plaintiff's claims cannot proceed for two independent reasons.

*First*, this case should be dismissed because the RLA preempts Plaintiff's claims in their entirety. Union Pacific at all relevant times had a collective bargaining agreement with the Machinists Union, which represented Plaintiff during his employment with Union Pacific. Under the RLA, "[a] dispute about the interpretation or administration of a collective bargaining agreement must be resolved by an adjustment board." *Miller v. Sw. Airlines Co.*, 926 F.3d 898, 903 (7th Cir. 2019). The means by which Union Pacific tracked and recorded Plaintiff's attendance at M19A falls within the scope of the collective bargaining agreement, and thus this dispute must be adjudicated by an adjustment board. Because this dispute falls within the exclusive jurisdiction of an adjustment board, this case should be dismissed.

*Second*, and in the alternative, Union Pacific is exempt from liability under Section 25(e) of BIPA, which provides that the Act does not "apply to a contractor [or] subcontractor … of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e). Throughout the time period covered by Plaintiff's claims, Union Pacific was a government contractor for Metra operating commuter trains on behalf of Metra on the UP North, UP Northwest, and UP West lines. Plaintiff's work at the M19A Facility supported Union Pacific's provision of services under its contract with Metra. Because Union Pacific falls squarely within the scope of BIPA's government contractor exemption, Union Pacific is entitled to summary judgment.[1]

---

[1] In arguing that Plaintiff's claims are preempted and that Union Pacific has been a government contractor throughout the relevant time period, Union Pacific does not waive and expressly preserves all other defenses, including that the applicable statute of limitations bars some or all of Plaintiff's claims and that the finger scans taken by the timekeeping system at issue are not biometric identifiers or biometric information under BIPA.

## II.     FACTUAL BACKGROUND

### A.     Union Pacific Served As A Government Contractor For Metra At All Relevant Times

From approximately 1995 through May 2025, Union Pacific operated commuter service on three rail lines—the UP North, UP Northwest, and UP West lines—as a contractor for Metra. *See* Union Pacific Local Rule 56.1(a)(2) Statement ("SUMF") ¶ 10.   Metra is a municipal corporation that provides commuter services to and from Chicago.  *See Union Pac. R.R. Co. v. RTA*, 2021 WL 4318106, *1 (N.D. Ill. Sep. 23, 2021).   Union Pacific operated the commuter service on those lines since it acquired the Chicago & North Western railroad in 1995.  SUMF ¶ 11.  From January 2010 to May 2025, Union Pacific's service to Metra was governed by a Purchase of Service Agreement and subsequent amendments.  *Id.* ¶ 12.  At all times under that contract, Metra owned the commuter trains that ran on those lines, while Union Pacific owned the lines themselves.  *Id.* ¶ 13.  Pursuant to that contract, Union Pacific employees operated and maintained the commuter trains for Metra and performed administrative functions, such as selling tickets and collecting fares.  *Id.* ¶ 14.

From approximately 1995 until June 2024, Union Pacific owned and operated the M19A Facility in Chicago.  *Id.* ¶ 18.  The M19A Facility was staffed by Union Pacific maintenance personnel to support Union Pacific's contract with Metra.  *Id.* ¶ 19.  At the M19A Facility, Union Pacific employees performed maintenance and annual inspections on locomotives that were used on Metra routes.  *Id.* ¶¶ 20-21.  From 1996 to June 2024, Plaintiff worked as a machinist at the M19A Facility.  *Id.* ¶¶ 30.  Mr. Hightower was assigned to Union Pacific's Commuter Operations service unit, which supported Union Pacific's work for Metra.  *Id.* ¶ 30.  As a machinist working in the Commuter Operations service unit at the M19A Facility, Plaintiff performed work on equipment that was primarily used to provide commuter rail service for Metra.  *Id.* ¶ 30.

Throughout Plaintiff's employment with Union Pacific, Plaintiff was a member of the Machinists Union, with which Union Pacific had a collective bargaining agreement and which was the exclusive bargaining agent for Plaintiff and the other machinists at the M19A Facility. *Id.* ¶¶ 31-33.

For decades, Union Pacific used various methods to ensure that it accurately tracked employee attendance and time at the M19A Facility, and since at least 2004, Union Pacific has required employees to clock in and out of M19A. *Id.* ¶¶ 23-24. Since at least 2019, Union Pacific required employees to clock in and out of the M19A Facility using an Equipment Data Collection System ("EDCS"), which required employees to scan their fingers upon arriving at and leaving the facility. *Id.* ¶ 25. The EDCS system helped ensure accuracy in employee attendance and timekeeping. *Id.* ¶ 26. The use of the EDCS technology to track employee arrival and departure from work at M19A was consistent with Union Pacific's long-standing practice of recording employee attendance at the M19A Facility. *Id.* ¶ 27. In June 2024, Union Pacific transferred operation of the M19A Facility to Metra and Plaintiff became a Metra employee. *Id.* ¶ 34.

### B. Plaintiff's Claims

In December 2024, Plaintiff filed this lawsuit, which alleges that Union Pacific required employees "to scan their handprints, fingerprints, and/or thumbprints to access the timekeeping system on which they clocked in and out," without providing written notice or obtaining written releases under BIPA. Dkt. 1-2 ¶¶ 6, 14-17. Plaintiff alleges that through its "employee timekeeping system," Union Pacific "collected, captured, and/or otherwise obtained the biometric identifiers of Plaintiff and other hourly-paid employees." *Id.* ¶¶ 14-15. Plaintiff claims that, in doing so, Union Pacific violated BIPA. *Id.* ¶¶ 16-17, 34-40. Union Pacific filed its Answer and Affirmative Defenses on March 7, 2025. Dkt. 13.

### III. ARGUMENT

This case may not proceed absent subject matter jurisdiction. *See Miller*, 926 F.3d at 902. Plaintiff bears the burden of establishing subject matter jurisdiction. *See Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731 (7th Cir. 2021). When a federal court lacks subject matter jurisdiction, the case must be dismissed under Rule 12(b)(1). *See Continental Indemnity Co. v. BII, Inc.*, 104 F.4th 630, 636 (7th Cir. 2024).

A Rule 12(c) motion for judgment on the pleadings is appropriate "after the complaint and answer have been filed by the parties." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Rule 12(c) motions are evaluated under the same standard that applies to Rule 12(b)(6) motions. *See Pisciotta v. Old. Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It falls on the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Conclusory statements ungrounded in specific facts do not avoid summary judgment. *Id.* at 256.

### A. This Case Should Be Dismissed Because The RLA Preempts Plaintiff's Claims

Whether viewed as a jurisdictional bar under Rule 12(b)(1) or as a merits issue warranting judgment under Rule 12(c), the RLA preempts Plaintiff's claims, requiring that this case be dismissed. Throughout his employment with Union Pacific, Plaintiff was represented by the Machinists Union, which was the exclusive bargaining agent for machinists at the M19A Facility, including Plaintiff. SUMF ¶¶ 31-32. The Machinists Union has a collective bargaining agreement with Union Pacific. *Id.* ¶ 33. Union Pacific's longstanding practice of tracking employee time and attendance at M19A falls within the scope of that agreement. Because resolving this dispute

5

requires the application and interpretation of the collective bargaining agreement, this dispute must be decided by an adjustment board and Plaintiff's BIPA claims are thus preempted.

### 1. The RLA Preempts Disputes Involving The Application Or Interpretation Of Collective Bargaining Agreements

The RLA was enacted to "provide for the prompt and orderly" resolution of labor disputes involving airlines and railroads. 45 U.S.C. § 151a; *see Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (explaining that Congress sought to "promote stability" via the RLA "by providing a comprehensive framework for resolving labor disputes"). Under the RLA, whether a court has jurisdiction over a particular dispute depends on whether the dispute is a "major dispute" or a "minor dispute." *See Int'l Bhd. of Teamsters v. Republic Airways Inc.*, 127 F.4th 688, 694 (7th Cir. 2025). While courts have jurisdiction over "major disputes"—*i.e.*, disputes relating to the formation of a collective bargaining agreement, *see id.*—the RLA requires that parties arbitrate "minor disputes" before an adjustment board—*i.e.*, disputes that "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Norris*, 512 U.S. at 252 (quotations omitted) (citing 45 U.S.C. § 151a); *see also Consol. Rail Corp. v. Ry. Labor Executives Ass'n*, 491 U.S. 299, 302 (1989) ("*Conrail*") (explaining "major disputes seek to create contractual rights," while "minor disputes [seek] to enforce them"); *Trainmen v. Chi. R. & I.R. Co.*, 353 U.S. 30, 33 (1957) (reasoning that "[m]inor disputes involve 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation'") (citation omitted).

If it is unclear whether a dispute is major or minor, "there is a large thumb on the scale in favor of minor, and hence arbitration." *Bhd. of Loc. Eng'rs and Trainmen v. Union Pac. R. Co.*, 879 F.3d 754, 758 (7th Cir. 2017); *see also Republic Airways*, 127 F.4th at 694. "The burden on a railroad to convince the court that its [actions] are only an interpretation or application of an

existing [collective bargaining agreement] is quite low." *Union Pac.*, 879 F.3d at 758. Where a dispute is minor and subject to arbitration, the dispute cannot proceed in federal court and instead must proceed before an adjustment board. *Id.* at 756 (finding that district courts lack subject matter jurisdiction to adjudicate minor disputes); *see also Miller*, 926 F.3d at 904 (finding claims "preempted" where "state law gives workers rights beyond those provided by federal law and collective bargaining agreements").

Not every dispute involving the interpretation of a collective bargaining agreement turns on the agreement's express terms. As the Supreme Court recognized, collective bargaining agreements "may include implied, as well as express, terms." *Conrail*, 491 U.S. at 311 (quotations and citation omitted); *see also Kwasnik v. Nat'l R. Pass. Corp.*, 1997 WL 109977, at *4 (N.D. Ill. Mar. 7, 1997) (similar); *Bhd. of Main. of Way Emps. v. Union Pac. R. Co.*, 2003 WL 21673930, at *12 (N.D. Ill. July 16, 2003) (holding that courts must "look beyond the explicit terms" of a collective bargaining agreement to determine if a dispute is minor). That is particularly true in the railroad industry, in which "it is common practice to omit from written agreements non-essential practices that are acceptable to both parties." *Ry. Labor Executives Ass'n v. Norfolk & W. Ry. Co.*, 833 F.2d 700, 705 (7th Cir. 1987) (quotations and citation omitted).

For instance, it is "well established" that a dispute over a railroad's practice is "minor"—meaning that it involves the interpretation of a collective bargaining agreement—when the railroad "acted similarly in the past with the union's knowledge and acquiescence," even when the collective bargaining agreement does "not explicitly address the dispute in issue." *Burlington N. R. Co. v. United Transp. Union*, 862 F.2d 1266, 1273 (7th Cir. 1988). The same goes for disputes over "practices and procedures that are part of the employment relationship," even if not enshrined "explicit[ly]" in a collective bargaining agreement, as such disputes fall "within the category of

claims fairly characterized as minor disputes." *Lee v. Union Pac. R. Co.*, 2004 WL 2937385, at *2-3 (N.D. Ill. May 24, 2004).

*Conrail* illustrates the point. There, the Supreme Court considered whether "the inclusion of drug testing in … physical examinations" was "arguably justified by the parties' collective-bargaining agreement." 491 U.S. at 311. Neither party relied on any "express provision" of the collective bargaining agreement, and in fact, the agreement was "not part of the record" before the Court. *Id.* Yet the Court nevertheless concluded that the dispute was a minor one. *Id.* at 312. Recognizing that collective bargaining agreements can have implied terms based on the parties' "practice, usage, and custom," *id.* at 311 (quotations and citation omitted), the Court explained that the dispute rested "solely upon implied contractual terms, as interpreted in light of past practice," *id.* at 312. The Court noted that drug testing had long had a place in Conrail's physical examination of its employees in certain circumstances. *Id.* at 317. Because Conrail's submission that the dispute turned on the interpretation of the collective bargaining agreement was "neither frivolous nor obviously insubstantial," the Court ruled that the dispute lay "within the exclusive jurisdiction of the [National Railroad Adjustment] Board." *Id.* at 310; *see also Bhd. of Ry., Airline & S.S. Clerks v. Atchison, Topeka & Santa Fe Ry. Co.*, 847 F.2d 403, 407 (7th Cir. 1988) (courts "must interpret the agreement to include recognized past practices that establish the 'course of dealing between the parties'"); *VanSylck v. GoJet Airlines, LLC*, 323 F.R.D. 266, 271 (N.D. Ill. 2018) (same).

### 2.    This Case Presents A Minor Dispute Under The RLA

This case presents a minor dispute and is therefore preempted by the RLA. Union Pacific long maintained a practice of documenting and tracking employee attendance at the M19A Facility. SUMF ¶¶ 23-25. Indeed, the M19A Facility could not have operated effectively if Union Pacific did *not* track the time employees spent at the facility to ensure that they were present onsite

when they were supposed to be. *Id.* ¶ 28. And Union Pacific could not accurately calculate employee pay without maintaining accurate attendance records for the M19A Facility. *Id.* ¶ 29.

Due to Union Pacific's longstanding practice of collecting employee attendance and time-keeping data, the dispute here turns on an established "practice, usage, and custom" and thus is a minor dispute under the RLA. *Conrail*, 491 U.S. at 311. BIPA expressly provides that either a person *or* their "legally authorized representative" may agree to the collection of biometric identifiers and/or biometric information. 740 ILCS 14/15(b). Here, Union Pacific's longstanding practice of collecting employee attendance and time data shows that the Machinists Union—Plaintiff's "legally authorized representative"—agreed to Union Pacific's use of the EDCS system. *Kwasnik*, 1997 WL 109977, at *4 (finding dispute minor where it turned on "an implied term of the collective bargaining agreement, based on past practice"); *see also Miller*, 926 F.3d at 903 (in finding RLA preemption, reasoning that unions and railways must have terms governing "how workers" record their attendance at work). At a minimum, Union Pacific's implementation of the EDCS system was "arguably justified" by the implied terms of its collective bargaining agreement with the Machinists Union. *Conrail*, 491 U.S. at 311. Therefore, the dispute lies within the exclusive jurisdiction of an adjustment board. *Id.* at 312.

Governing precedent confirms that this dispute requires interpretation of the parties' collective bargaining agreement. In *Miller*, the Seventh Circuit considered "whether persons who contend that air carriers have violated state law by using biometric information in the workplace must present these contentions to an adjustment board under the Railway Labor Act, which applies to air carriers as well as railroads." 926 F.3d at 900. The court answered yes, reasoning "that how workers clock in and out is a proper subject of negotiation between unions and employers—is, indeed, a mandatory subject of bargaining." *Id.* at 903; *see also* 45 U.S.C. § 152 ("It shall be the

duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions.").  And, *Miller* continued, whether the union "*did* consent to the collection and use of biometric data, or perhaps grant authority through a management-rights clause, is a question for an adjustment board."  926 F.3d at 903.

*Miller* squarely applies here.  There, as here, the plaintiff brought a BIPA claim regarding the alleged collection of biometric information.  And *Miller*, like this case, implicated "how" employees "clock in and out" of work.  Because unions normally "give consent on behalf of the whole bargaining unit" when it comes to issues regarding employee timekeeping and attendance— issues that are "routinely covered by collective bargaining"—the dispute at issue here is likewise a minor dispute under the RLA.  *Id.* at 904.  And as *Miller* concludes, "if a dispute necessarily entails the interpretation or administration of a collective bargaining agreement, there's no room for individual employees to sue under state law—in other words, state law is preempted to the extent that a state has tried to overrule the union's choices on behalf of the workers."  *Id.*

Because this dispute is a minor dispute under the RLA, Plaintiff's BIPA claims are preempted by the RLA and must be arbitrated before an adjustment board.  As the Seventh Circuit explained, when "a dispute necessarily entails the interpretation or administration of a collective bargaining agreement" (*i.e.*, when a dispute is "minor"), then "there's no room for individual employees to sue under state law."  *Miller*, 926 F.3d at 904.  A federal court cannot remand a minor dispute to a state court.  *See Stephens v. Am. Airlines, Inc.*, 596 F. Supp. 3d 1059, 1064 (N.D. Ill. 2022) ("Remand to a state court is inappropriate because the RLA rules out the continuation of this case in any court."); *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002) ("[O]nly the arbitral boards convened under the aegis of the Railway Labor Act have the

10

authority to determine the rights conferred by a collective bargaining agreement in the airline industry."). Instead, the case must either be dismissed for lack of subject matter jurisdiction or judgment must be entered on the pleadings. *See Miller*, 926 F.3d at 901; *Republic*, 127 F.4th at 694 n.2 (declining to decide whether a suit preempted by the RLA must be dismissed for lack of jurisdiction under Rule 12(b)(1) or on the merits).

### B. Union Pacific Is Entitled to Summary Judgment As A Government Contractor

Even if this case were not subject to dismissal on RLA preemption, Union Pacific is entitled to summary judgment because throughout the relevant time period, Union Pacific was working as a local government contractor.[2] As noted, Section 25(e) of BIPA states: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e). Thus, Section 25(e) "explicitly exempts government contractors" from liability under BIPA. *Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U, ¶ 6, *appeal denied*, 201 N.E.3d 582 (Ill. 2023). Union Pacific falls within the Section 25(e) exemption, as it was a contractor for Metra, a local government entity, from approximately 1995 through May 2025. SUMF ¶¶ 10-12. Further, Plaintiff's work for Union Pacific at the M19A Facility supported Union Pacific's Metra contract as work performed at the M19A Facility supported the operation of Metra commuter lines. *Id.* ¶¶ 18-21, 30. Because Union Pacific was a government contractor throughout the entire period corresponding to Plaintiff's claims, it is entitled to summary judgment.

---

[2] Plaintiff purports to assert claims for the period five years before the filing of this action (*i.e.*, December 12, 2019) to present. Dkt. 1-2 ¶ 18. As noted, Plaintiff ceased being a Union Pacific employee in June 2024. SUMF ¶ 34.

*First*, Union Pacific is a "contractor." The plain meaning of "contractor" is "one who contracts to do work for or supply goods to another." *Contractor*, Black's Law Dictionary (11th ed. 2019); *see also Enriquez*, 2022 IL App (1st) 211414-U, ¶ 20 (citing Black's Law Dictionary); *Tillman v. Pritzker*, 183 N.E.3d 94, 102 (Ill. 2021) ("The best indicator of legislative intent is the language of the statute, given its plain, ordinary meaning."). Union Pacific was a party to a contract with a local unit of government (*i.e.*, Metra) pursuant to which it performed work for that government entity—specifically, operating and maintaining commuter rail lines, and performing administrative functions, such as selling tickets and collecting fares. *See supra* Section II.A; SUMF ¶¶ 10-14. The contract also required Union Pacific to furnish all labor, administrative, professional, and supervisory services necessary to operate commuter trains on behalf of Metra. *Id.* ¶ 15. In addition, Union Pacific was responsible for providing the real and personal property necessary for the services, including rail cars and locomotives. *Id.* ¶ 16. Union Pacific also provided necessary maintenance services on trains used for Metra's commuter service. *Id.* ¶ 17. Union Pacific thus is a "contractor" under Section 25(e). *See Enriquez*, 2022 IL App (1st) 211414-U, ¶ 22 (because defendant performed services for Metropolitan Pier and Exposition Authority "pursuant to a contract, it is a government contractor within the ordinary meaning of that term").

*Second*, Union Pacific's contract was with a local unit of government—specifically, Metra. SUMF ¶ 12 (documenting contract with Metra and amendments thereto). Metra is a "local government agency" under Section 25(e). *See* 30 ILCS 805/3(a) ("'Local government' means a municipality, county, township, other unit of local government, school district, or community college district."); *MCI WorldCom Commc'ns, Inc. v. Metra Commuter Rail Div. of RTA*, 786 N.E.2d 621, 624 (Ill. Ct. App. 2003) (Metra is "a unit of local government").

*Third*, Union Pacific's alleged conduct occurred "when [it was] working for" Metra. *See* 740 ILCS 14/25(e) (providing that BIPA does not apply to contractors "when working for" an agency). The M19A Facility directly supported Metra trains. SUMF ¶ 21. The work that Union Pacific's employees performed at M19A was in support of Union Pacific's contract with Metra. *Id.* ¶¶ 19-21. That includes work Plaintiff performed as a machinist at the facility. *Id.* ¶¶ 2, 20-21, 30. In other words, Plaintiff used the EDCS to clock in and out of work at M19A, where he worked on equipment that Union Pacific used to operate Metra commuter trains. *Id.* ¶ 30. Thus, Section 25(e) applies and exempts Union Pacific from liability under BIPA.

Plaintiff has asserted that as an employee in the Commuter Operations service unit at the M19A Facility, he worked on equipment that was primarily, but not exclusively, used to provide commuter rail service for Metra. *See* SUMF ¶ 30 n.2. That contention does not create a material dispute of fact, however, because BIPA is targeted at companies, not individuals. *See* 740 ILCS 14/15 (imposing substantive requirements on "private entit[ies]"). The government contractor exception speaks to the relationship between the defendant—the "contractor"—and the "government." The exception applies "when [the contractor is] working for that State agency or local unit of government." 740 ILCS 14/25(e). Nothing in Section 25(e) suggests that its protection evaporates if an employee who worked at a facility that supported a government contract happened to perform work unrelated to the government contract on a particular day.

Here, it is undisputed that throughout the pertinent time period (i) Union Pacific was a contractor for Metra; (ii) under its Metra contract, Union Pacific was responsible for providing maintenance on trains used to provide Metra commuter rail service; (iii) Union Pacific employees at the M19A Facility performed such maintenance; (iv) Plaintiff worked at the M19A Facility; (v) Plaintiff was assigned to Union Pacific's Commuter Operations unit, which supported Union

13

Pacific's work for Metra; (vi) and Plaintiff performed work on equipment that was primarily used to provide commuter rail service for Metra. *See* SUMF ¶¶ 18-21, 30.[3] That is, throughout the pertinent time period, Union Pacific was a Metra contractor performing work for Metra at the M19A Facility. *See* SUMF ¶¶ 19-20. Because Section 25(e) focuses on the status of the defendant, not the individual who has sued the defendant, Section 25(e) applies.

In sum, Union Pacific operated the M19A Facility to support its ongoing and longstanding contract with Metra. *Id.* ¶¶ 10-21. Employees at M19A inspected and maintained the locomotives operating on Metra lines. *Id.* ¶ 20. Plaintiff worked at the M19A Facility "when [Union Pacific was] working for" Metra, and he performed work at that facility in support of Union Pacific's longstanding Metra contract. 740 ILCS 14/25(e); SUMF ¶ 30. As a result, Union Pacific is exempt from liability under Section 25(e) and is entitled to summary judgment.

## IV. CONCLUSION

Because the RLA preempts Plaintiff's claims, this Court should either dismiss this case for lack of subject matter jurisdiction or grant judgment on the pleadings to Union Pacific. In the alternative, this Court should grant summary judgment to Union Pacific and dismiss this lawsuit with prejudice under Section 25(e) of BIPA.

\*   \*   \*

Counsel for Union Pacific conferred with Plaintiff's counsel, who indicated that Plaintiff opposes the relief requested in this Motion. Union Pacific and Plaintiff respectfully propose the following briefing schedule on this disputed Motion:

---

[3] Whether Plaintiff worked *exclusively* on equipment used to provide commuter rail service for Metra is not material to this motion and thus, for purposes of this motion only, Union Pacific does not dispute Plaintiff's assertion that the equipment on which he worked was not exclusively used for Metra. Union Pacific reserves all rights regarding the issue should the case move forward.

- Plaintiff's Opposition filed November 5, 2025.

- Union Pacific's Reply filed November 19, 2025.

Dated: October 8, 2025                    Respectfully submitted,

                                          /s/ *Johanna Spellman*
                                          Johanna Spellman, One of the Attorneys for
                                          Defendant Union Pacific Railroad Company
                                          Sean M. Berkowitz (Illinois Bar No. 6209701)
                                             sean.berkowitz@lw.com
                                          Gary Feinerman (Illinois Bar No. 6206906)
                                             gary.feinerman@lw.com
                                          Johanna Spellman (Illinois Bar No. 6293851)
                                             johanna.spellman@lw.com
                                          Kathryn A. Running (Illinois Bar No. 6330369)
                                             kathryn.running@lw.com
                                          LATHAM & WATKINS LLP
                                          330 North Wabash Avenue, Suite 2800
                                          Chicago, Illinois 60611
                                          Telephone: (312) 876-7700
                                          Facsimile: (312) 993-9767

## <u>CERTIFICATE OF SERVICE</u>

I, Johanna Spellman, hereby certify that on October 8, 2025, I caused a copy of the foregoing to be filed using the Court's CM/ECF system, which provides service to all counsel of record.


Dated:  October 8, 2025 <u>*/s/ Johanna Spellman*</u>
Johanna Spellman